2012-1633

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

FRACTUS, S.A.,

Plaintiff-Appellee,

v.

SAMSUNG ELECTRONICS CO., LTD.,
SAMSUNG TELECOMMUNICATIONS AMERICA, LLC,
SAMSUNG ELECTRONICS RESEARCH INSTITUTE, and
SAMSUNG SEMICONDUCTOR EUROPE GMBH,

Defendants-Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS IN CASE NO. 09-CV-203, CHIEF JUDGE LEONARD DAVIS

REPLY BRIEF OF DEFENDANTS-APPELLANTS

GEORGE A. RILEY
SUSAN ROEDER
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
(415) 984-8700

NEIL P. SIROTA
ERIC J. FARAGI
JENNIFER C. TEMPESTA
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, New York 10112
(212) 408-2500

MICHAEL J. BARTA
BAKER BOTTS L.L.P.
The Warner
1299 Pennsylvania Avenue
Washington, D.C. 20004
(202) 639-7700

*Attorneys for Defendants-Appellants*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................1

ARGUMENT ......................................................................................2

I.  "Polygon" And "Second Level of Detail" Were Improperly Construed ........2

   A.  The Ordinary Meaning Of "Polygon" Applies ........................................2

   B.  The "Second Level of Detail" In A Multilevel Structure Is Similar To The Basic Elements In A Symmetrical Shape ........................................5

II.  Fractus Presented No Substantial Evidence Of Infringement ......................10

   A.  Dr. Long's Polygon Drawings Are Not Evidence Of "Clearly Visible And Individually Distinguishable" Polygons ...........................................10

   B.  Fractus Concedes It Improperly Collapsed The "50% Free Perimeter" Limitation And The "Clearly Visible and Individually Distinguishable" Limitation ..................................................................11

   C.  The Antennas' "Polygons" Do Not Have The Same Number Of Sides .14

      1.  All Antenna Portions Alleged To Be Polygons Do Not Literally Have Four Sides ...............................................................................14

      2.  Finding That Various Multi-Sided Antenna Portions Are All Equivalent To Drawn Four-Sided Polygons Vitiates A Critical Limitation And Violates Limits Established By The Prior Art Cited In The Prosecution History .......................................................15

      3.  Fractus Presented No Substantial Evidence The Actual Antenna Portions Are Equivalent To The Drawn Four-Sided Polygons ....... 20

   D.  The "Same Type" And "Same Number Of Sides" Requirements Are Distinct, And Fractus Presented No Evidence Of The Former ..............22

   E.  Fractus Offered No Admissible Evidence Of Infringement For 50 Of The 51 Antennas ...............................................................................24

III.  The District Court Erred In Denying JMOL Of Invalidity ..........................26

IV.    The District Court Erred In Denying JMOL For Non-Willfulness ...............27

V.    The Damages Award Should Be Vacated ....................................................29

    A.    Fractus Violated The Entire Market Value Rule, And Its Expert's Apportionment Analysis Was Unreliable And Should Have Been Excluded ................................................................................................29

    B.    Samsung's Appeal Focuses On Fractus' Improper Use Of The Phones' Entire Market Value, Not The Quantum Of Evidence Presented To The Jury ............................................................................32

    C.    Reversal On Claim Construction Of "Polygon" Or On Infringement Of Certain Phones Is Another Independent Basis To Vacate The Damages Award ....................................................................................34

CONCLUSION .......................................................................................................35

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Centricut, LLC v. Esab Group, Inc.*,
    390 F.3d 1361 (Fed. Cir. 2004) ........................................................26

*Conopco, Inc. v. May Dep't Stores Co.*,
    46 F.3d 1556 (Fed. Cir. 1994) ..........................................................16

*Deere & Co. v. Bush Hog, LLC*,
    703 F.3d 1349 (Fed. Cir. 2012) ........................................................20

*Energy Transp. Group, Inc. v. Demant Holding A/S*,
    697 F.3d 1342 (Fed. Cir. 2013) ........................................................35

*Function Media, L.L.C. v. Google Inc.*,
    708 F.3d 1310 (Fed. Cir. 2013) ........................................................29

*Harris Corp. v. Ericsson Inc.*,
    417 F.3d 1241 (Fed. Cir. 2005) ...................................................5, 10

*Irdeto Access, Inc. v. Echostar Satellite Corp.*,
    383 F.3d 1295 (Fed. Cir. 2004) .....................................................6, 8

*J.T. Eaton & Co., Inc. v. Atlantic Paste & Glue Co.*,
    106 F.3d 1563 (Fed. Cir. 1997) ..........................................................6

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
    694 F.3d 51 (Fed. Cir. 2012) ..................................................... 31, 32

*Merck & Co. v. Teva Pharms. USA, Inc.*,
    395 F.3d 1364 (Fed. Cir. 2005) ..........................................................2

*Planet Bingo, LLC v. Game Tech Int'l, Inc.*,
    472 F.3d 1338 (Fed. Cir. 2006) ........................................................16

*ResQNet.com, Inc. v. Lansa, Inc.*,
    594 F.3d 860 (Fed. Cir. 2010) .....................................................32, 34

*Rite-Hite Corp. v. Kelley Co., Inc.*,
    56 F.3d 1538 (Fed. Cir. 1995) (en banc) ........................................34

*Sage Prods., Inc. v. Devon Indus., Inc.*,
126 F.3d 1420 (Fed. Cir. 1997) ....................................................17, 24

*Schering Corp. v. Amgen Inc.*,
222 F.3d 1347 (Fed. Cir. 2000) ............................................................4

*Texas Instruments Inc. v. Cypress Semiconductor Corp.*,
90 F.3d 1558 (Fed. Cir. 1996) ......................................................20, 21

*Trading Techs. Int'l v. eSpeed, Inc.*,
595 F.3d 1340 (Fed. Cir. 2010) ..........................................................16

*Tronzo v. Biomet, Inc.*,
156 F.3d 1154 (Fed. Cir. 1998) .....................................................16, 17

*Uniloc USA, Inc. v. Microsoft Corp.*,
632 F.3d 1292 (Fed. Cir. 2011) .....................................................30, 32

*Verizon Servs. Corp. v. Vonage Holdings Corp.*,
503 F.3d 1295 (Fed. Cir. 2007) ..........................................................34

*Weiss v. Allstate Ins. Co.*,
512 F. Supp. 2d 463 (E.D. La. 2007)....................................................25

*Wilson Sporting Goods Co. v. David Geoffrey & Assocs.*,
904 F.2d 677 (Fed. Cir. 1990) ............................................................17

*Zygo Corp. v. Wyko Corp.*,
79 F.3d 1563 (Fed. Cir. 1996) ............................................................35

## OTHER AUTHORITIES

Fed. R. Evid. 801(c) ..............................................................................25

# INTRODUCTION

Fractus fails in its defense of the district court's claim construction order regarding "polygon" and "second level of detail."   Under Fractus' view, a "polygon" may comprise any combination of straight and curved lines.   This violates fundamental rules of construction and ignores both the term's ordinary meaning and the limitations imposed by the MLV patents.   Fractus does not deny that "second level of detail" was accorded no meaning at all.   As a result, "multilevel structure" — the essence of the alleged invention — encompasses any irregular collection of many-sided elements, an arrangement indistinguishable from the prior art.   Correcting these errors requires reversal.

Fractus' brief also fails to show it presented substantial evidence of infringement in three areas.   First, Fractus recognizes it cannot escape the conclusion, compelled by the evidence and its expert's admissions, that most alleged polygons were not "clearly visible" as required by the claims.   Fractus responds by collapsing this "clearly visible" requirement into the distinct perimeter limitation, an approach that fails as a matter of law.   Second, Fractus attempts to justify its expert's analysis by insisting that all the various multi-sided antenna portions are equivalent to four-sided polygons.   But this approach violates the doctrine of equivalents by vitiating a claim limitation and exceeds the limits imposed by the prior art.   Third, recognizing the polygons drawn by its expert were

not of the "same type," Fractus improperly conflates the distinct "same type" and "same number of sides" requirements.  Each of these failures is an independent basis for reversal.

No reasonable party could have anticipated the court's claim construction, which ignores express limitations, or Fractus' contrived polygon-drawing methodology.  Thus, Samsung's belief it was not infringing was objectively reasonable.  Fractus cannot deny it violated the entire market value rule, and its attempt to excuse that violation with other evidence is unavailing.  Thus, the enhancement and damages award cannot stand.

## ARGUMENT

### I.    "Polygon" And "Second Level of Detail" Were Improperly Construed

#### A.    The Ordinary Meaning Of "Polygon" Applies

It is undisputed the ordinary meaning of "polygon" is a closed plane figure bounded by straight lines.  A97.  This ordinary meaning controls because the MLV patents do not clearly express an intent to redefine "polygon" to encompass hybrid shapes combining both straight and curved lines.  *See Merck & Co. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1369-71 (Fed. Cir. 2005).

Fractus alleges the '868 claims encompass "hybrid shapes" and "curve-sided polygons."  Fractus Br. 24.  But these claims only include circles and ellipses, and related polyhedrons — none of which constitute hybrid shapes with both straight

and curved sides. And as explained in Samsung's opening brief, the inventors expressly stated that, for the invention's purposes, circles and ellipses are treated, not as having curves, but instead as "polygon[s] with a large number of sides." Samsung Br. 31-32. Although Fractus argues the specification does not state that a circle has "straight sides" (Fractus Br. 23), "straight sides" is the only reasonable reading. As lead inventor Carles Puente explained in his dissertation, submitted to the Patent Office during prosecution, "a polygonal form can be inscribed inside the circumference [of a circle] in such a way that the curve can be approximated by the straight lines of the polygon to any desired degree of accuracy…." A3597.

Similarly, the claimed cylinders and cones do not support Fractus' construction. Fractus argues the side-faces of those polyhedrons are curved surfaces that should be considered curved polygons because a polyhedron is "a closed solid figure bounded by polygons." A125. Fractus again ignores the specification's express teaching that circles are treated as having "a large number of sides." A cylinder, therefore has many rectangular side-faces, as shown below (while a cone's side-faces are triangular):



Fractus points to unasserted dependent claims of the '208 patent claiming polygons comprising portions of circles or ellipses. These claims were filed more than five years after the MLV patents' priority date, find no support in the MLV specification, and should be afforded no weight. *See Schering Corp. v. Amgen Inc.*, 222 F.3d 1347, 1353 (Fed. Cir. 2000).

Fractus also cites the general disclosure of "horn" and "reflector" antennas. Fractus illustrates the argument by taking the two-dimensional polygon-based multilevel structure of Figure 4.7 and placing it on curved surfaces. Fractus Br. 29. Fractus errs by confusing the polygon itself with the surface on which the polygon is placed. A polygon is a two-dimensional element, i.e., "a closed *plane* figure …." A99 (emphasis added). Fractus' expert, Dr. Long, articulated this distinction:

> the patent calls out very clearly that our polygons can be *on* flat surfaces or our polygons can be *on* shapes that aren't flat…. [I]t talks about polygons *on reflector antennas*…. It talks about *on the surface of a cone*…. It can be some sort of smooth curved surface that we have our polygons *on*.

A1016:8-23 (emphasis added). In the illustrations on page 29 of Fractus' brief, the multilevel structure is still that of Figure 4.7, not a hybrid shape.

Samsung has not waived its "polygon" construction. Samsung initially proposed "a closed plane figure bounded by straight lines" and explained in its original claim construction brief that (1) a circle constitutes a "limiting case of a polygon with a large number of sides" and (2) "[t]his interpretation of circles and

ellipses comports with the plain and ordinary meaning of polygon as bounded by straight lines." A3884-85. The Magistrate Judge adopted Samsung's proposal but added, "further including circles and ellipses." Samsung sought clarification, proposing "polygon" be defined as a "closed plane figure bounded by straight lines, further including circles or ellipses as a limiting case of a polygon with a large number of sides." A3942; *see also* A3434-35. Samsung is plainly not arguing a new claim construction on appeal. *Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1251 (Fed. Cir. 2005) (only the "same concept" must be raised at the district court).

Recognizing its construction is untenable, Fractus argues that reversal of infringement would be required for only 11 of the 51 antennas. Fractus counts only the collections of simplified polygons drawn by Dr. Long, however, not the actual antennas. When the actual shape and contours of the antennas are examined, all but two include curved sides within alleged polygons. *See* A3490, A3124, A3489, A3119 (2 models); A3447-88, A3491-98 (remaining 49).

**B.    The "Second Level of Detail" In A Multilevel Structure Is Similar To The Basic Elements In A Symmetrical Shape**

Fractus identifies the multiple levels of detail as the "signature feature" of a multilevel structure. Fractus Br. 10. But Fractus does not dispute that the district court put no limitation whatsoever on the "second level of detail," rendering both "multilevel structure" and "second level of detail" meaningless. Thus, any

collection of polygons, no matter how irregular, satisfies the claims. This failure alone requires reversal.

Because the inventors coined "multilevel structure" and "second level of detail," their meanings "must be found somewhere in the patent," either expressly or implicitly. *J.T. Eaton & Co., Inc. v. Atlantic Paste & Glue Co.*, 106 F.3d 1563, 1568 (Fed. Cir. 1997); *Irdeto Access, Inc. v. Echostar Satellite Corp.*, 383 F.3d 1295, 1300 (Fed. Cir. 2004). The MLV specification explains and repeatedly shows that a multilevel structure's second level of detail is similar to the basic elements and, from that similarity, the overall shape is symmetrical.

Fractus incorrectly asserts the specification does not require similarity between a multilevel structure's second level of detail and its basic elements. Fractus erroneously conflates similarity with the requirement of certain claims that the number of sides in the perimeter is different than the number of sides in the base polygons. The second level of detail can be similar to the base polygons regardless of whether the actual perimeter has the same or a different number of sides, as seen in these examples with the actual perimeter annotated in green and the overall shape annotated in red:



The second level of detail is similar to the basic elements in every figure in the specification, including those Fractus cites as allegedly contradicting Samsung's construction, annotated in red below:



Figure 4.7, another example cited by Fractus, exhibits this characteristic on two levels, with "T"-shaped polygons as basic elements and the second level of detail exhibiting a similar shape:



4.7

Fractus misinterprets the amendment to claim 1 of the parent PCT application. Fractus Br. 34. The language "the multilevel structure and the polygons or polyhedrons which form it hav[e] different geometry" means exactly what appears in claim 1 of the '868 patent: "the perimeter of the multilevel structure has a different number of sides than the polygons that compose the multilevel structure." As explained above, the overall shape can still be similar to the base polygons regardless of whether the perimeter has the same or a different number of sides. "Self-similar" designs — a term Fractus uses for structures in which the number of sides of the second level of detail are the *same* as the number of sides as the polygon elements (A748:4-10; A8148) — are within the scope of a "multilevel structure" as seen in Figs. 3.1, 3.2, and 3.15.

The similarity between the second level of detail and the basic elements of a multilevel structure yields an obvious symmetry evident in all 66 examples in the MLV patents. Because "second level of detail" has no definition in the specification or the prior art, its meaning must be found in these illustrations and the teachings of the MLV patents. *See Irdeto*, 383 F.3d at 1300.

8

Straining to find one exception, Fractus argues Figure 5.8 must be viewed as a whole, rather than as three symmetrical multilevel structures, because Figure 5 is described in the specification as showing "examples of multilevel structures." Fractus Br. 37; A275, 4:13-14; A276, 5:35-37.  But Samsung's interpretation of Figure 5.8 as three multilevel structures is consistent with that description of the drawings.  Only Samsung's interpretation is consistent with the rest of the MLV specification.

Fractus' citation to a "flexibility" argument made during the PCT phase of prosecution is irrelevant to whether symmetry is part of the meaning of "multilevel structure."  That "flexibility" refers to the polygon's shape and/or the spacing between polygons in a multilevel structure, not the overall symmetry.  A8435.  Every patent figure cited in that response as exemplifying "flexibility" is symmetrical. *Id.*

Finally, Fractus argues Samsung waived the "similar to the basic elements" argument, although not the symmetry argument.   But in its opening claim construction brief, Samsung argued:

> The requirement of symmetry arises from Fractus' lexicography.  For example, the multilevel structures of the "present invention … can be grouped into higher order structures in a manner similar to the basic elements."  '868 patent at 2:41-46 (emphasis added). *See supra* § II.A.1.b.

9

A3876 (ellipsis in original).  In the brief's referenced section II.A.1.b., Samsung expressly sought a "second level of detail" definition in which the ordered structures "can be further grouped into higher order structures similar to the way the polygons … are grouped."  A111; *see also* A3874-75.  Samsung's arguments in this Court present "the same concept" and were not waived.  *Harris*, 417 F.3d at 1251.

Samsung objected generally to the Magistrate Judge's constructions to the extent they were inconsistent with Samsung's proposed constructions and arguments, and specifically by expressly referencing the claim construction brief sections containing the "similar to the basic elements" arguments.  A3938-41.  There was no waiver.[1]

## II.    Fractus Presented No Substantial Evidence Of Infringement

### A.    Dr. Long's Polygon Drawings Are Not Evidence Of "Clearly Visible And Individually Distinguishable" Polygons

Dr. Long's "polygon decomposition" methodology has no foundation in the MLV specification or the art generally.  *See* Samsung Br. 19-20, 41-43.  Broadly citing Dr. Long's own testimony, Fractus weakly suggests his analysis was "consistent with" the MLV patents and the knowledge of one of skill in the art.  Fractus Br. 43.  But Fractus does not refute Dr. Long's concession that "this is my

---

[1] Fractus claims waiver under Fifth Circuit law.  Claim construction waiver, however, is controlled by Federal Circuit law.  *Harris*, 417 F.3d at 1250-51.

work, not things that I've taken directly — or taken from the patent."  A1145:22-24.  As a wholly subjective approach for drawing allegedly "clearly visible" polygons that cannot be seen, Dr. Long's methodology cannot provide substantial evidence of infringement.

### B.    Fractus Concedes It Improperly Collapsed The "50% Free Perimeter" Limitation And The "Clearly Visible and Individually Distinguishable" Limitation

Fractus contends it presented substantial evidence of "clearly visible and individually distinguishable" polygons because more than 50% of the perimeter of each drawn polygon was allegedly not in contact with another drawn polygon. Fractus Br. 38-44.  Fractus does not contend, nor could it, that the drawn polygons were otherwise clearly visible in Samsung's antennas before Dr. Long drew them. Thus, the issue reduces to whether the clearly visible requirement is distinct from the 50% free perimeter requirement.  As explained in Samsung's opening brief, the two requirements are not redundant because drawn polygons can have more than 50% of their perimeter exposed but not be clearly visible and individually distinguishable.  Samsung Br. 47.

Fractus maintains Samsung is attempting to relitigate claim construction without first seeking clarification of, or appealing, an unfavorable construction. Fractus Br. 40.  Fractus, however, put this issue squarely before the district court

during the claim construction proceedings — and lost.  The district court construed

"multilevel structure" as comprising at least two levels of detail, wherein:

> [t]hese levels of detail are composed of polygons ... of the same type
> with the same number of sides ... wherein ***most of the polygons ... are***
> ***clearly visible and individually distinguishable*** <u>***and***</u> ***most of the***
> ***polygons ... having an area of contact, intersection or***
> ***interconnection with other elements (polygons ...) that is less than***
> ***50% of the perimeter or area***.

A122-23 (emphasis added).

The construction uses the conjunctive "and" to set forth the clearly visible

and 50% free perimeter requirements, and the order discusses the requirements

separately, several pages apart.  A118-19; A121-22.  Fractus objected to the

"clearly visible" requirement in the Magistrate Judge's claim construction order,

arguing "the requirement that the elements are clearly visible is redundant with the

requirement that the elements have an area of contact, intersection or

interconnection that is less than 50% of their perimeter."  A435.  The district court

overruled Fractus' objection and retained the two separate requirements.  Samsung

had no reason to object or seek clarification.

Nevertheless, Dr. Long improperly collapsed the two requirements at trial,

as Fractus acknowledges.  He testified that if his polygon drawings satisfied the

50% free perimeter requirement, the clearly visible requirement was also satisfied

without further analysis.  Fractus Br. 40; *see also* A994:8-A995:6; A1096:23-

A1097:17.  Samsung objected and was overruled.  A995:7-11.  This error tainted the entire infringement analysis.

Fractus cites no other evidence to support the jury's finding that the clearly visible requirement was met.  Dr. Long's entire testimony on point was his admission that only "10 or 15 percent" of the polygons were "the clearly visibles," and "[t]he usual case is just a few."  A1159:2-A1160:2.  Fractus suggests this admission refers to "polygons that 'jump out at you'" (Fractus Br. 42), as if polygons that "jump out at you" are different than "clearly visible" polygons.  They are not, as the description and figures of the MLV patents demonstrate.  Because the record contains no substantial evidence that the antennas are composed of polygons "most of [which] are clearly visible and individually distinguishable," either literally or under the DOE,[2] the infringement verdict must be reversed.

---

[2] Fractus never argued or attempted to demonstrate that Samsung's antennas have the equivalent of clearly visible and individually distinguishable polygons.

### C.    The Antennas' "Polygons" Do Not Have The Same Number Of Sides

#### 1.    All Antenna Portions Alleged To Be Polygons Do Not Literally Have Four Sides

To arrive at four-sided polygons, Dr. Long consistently ignored "sides" in the actual antenna shapes, even sides as large or larger than those he counted, as the following examples illustrate:

| Antenna Model | Actual Shape | Dr. Long's Drawn Polygon |
|---|---|---|
| SCH-U750 |  |  |
| SCH-U430 |  |  |
| SPH-A523 |  |  |

*See* A3467; A3461; A3493; A2937-42; A2892-95; A3144-48.

Fractus maintains that a collection of polygons having varying numbers of sides can literally meet the claim requirement that all polygons have the same number of sides.  Fractus Br. 45-46.  Fractus insists some polygon sides that provide "no significant electromagnetic effect" on antenna performance may be ignored for purposes of literal infringement.

Fractus provides no legal support for this novel proposition which would wipe out the distinction between literal infringement and DOE infringement. The alleged insignificance of differences between a claimed invention and an accused product is an equivalence argument and cannot establish literal infringement.

Fractus does not dispute that when the ***actual*** shape and contours of the accused antennas — including all allegedly insignificant holes, bumps, and notches — are considered, the "same number of sides" requirement is not satisfied.[3] Reversal of the literal infringement finding is therefore required.

> ### 2. Finding That Various Multi-Sided Antenna Portions Are All Equivalent To Drawn Four-Sided Polygons Vitiates A Critical Limitation And Violates Limits Established By The Prior Art Cited In The Prosecution History

It is undisputed the MLV specification emphasizes the critical importance of the geometric limitations of a multilevel structure. Samsung Br. 10; Fractus Br. 10. There is also no dispute that the MLV patents claim the alleged invention narrowly by incorporating these limitations into the definition of multilevel structure. In upholding the finding that various shapes with up to 12 sides are

---

[3] Fractus questions the accuracy of three of the demonstrative "silhouettes" prepared for Samsung's JMOL Motions. Fractus Br. 47-48. These silhouettes accurately depict the appearance of the antennas in the exhibits Fractus submitted to the jury. *See* A3471; A3459; A3452; A2979-82; A2872-75; A2799-801. In any event, Fractus does not deny it is applying an insubstantial differences analysis to support literal infringement, even with respect to the antennas from which the exemplary silhouettes were taken.

equivalent to four-sided polygons, the district court eliminated key geometric limitations of the claimed multilevel structure. This is a classic example of vitiation under this Court's jurisprudence. *See, e.g.*, *Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1160 (Fed. Cir. 1998).

Because the asserted MLV patent claims use the coined term "multilevel structure," the claims are narrowly drawn and not entitled to a broad equivalence scope. *See Conopco, Inc. v. May Dep't Stores Co.*, 46 F.3d 1556, 1562 (Fed. Cir. 1994) (DOE "cannot be used to erase 'meaningful structural and functional limitations of the claim on which the public is entitled to rely in avoiding infringement.'") (citations omitted). In the context of the MLV patents, shapes of varying numbers of sides from five to 12 are the antithesis of the four-sided polygons drawn by Dr. Long. *See Planet Bingo, LLC v. Game Tech Int'l, Inc.*, 472 F.3d 1338, 1345 (Fed. Cir. 2006) (refusing to apply DOE "where the accused device contain[s] the antithesis of the claimed structure"); *Trading Techs. Int'l v. eSpeed, Inc.*, 595 F.3d 1340, 1356 (Fed. Cir. 2010) (refusing to apply DOE where seemingly minor difference "lies at the heart of the advantages of the patented invention over prior art").

Dr. Long's general testimony that "small" sides relative to the overall antenna could be ignored, even when those sides were as large or larger than the counted polygon sides, allowed him to conclude that hundreds of different shapes,

with up to 12 sides each, were all four-sided polygons.  This was no different than the expert testimony that impermissibly vitiated the trapezoidal cup limitation in *Tronzo*.  *See* Samsung Br. 57-58.

Equating a large variety of irregular, many-sided shapes to a four-sided polygon satisfying the claims' narrow limitations would "reduce [the claims] to functional abstracts, devoid of meaningful structural limitations on which the public could rely."  *Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1424 (Fed. Cir. 1997) (finding "no reasonable juror could find" equivalency in view of narrow claims).  Fractus attempts to distinguish *Sage* by conflating the relatively complex process of designing an antenna, which is not claimed by the MLV patents, with the structure of the resulting antenna device.  Fractus Br. 55.  The antenna design process may be complex, but here, as in *Sage*, "[t]he claim[s] at issue define[] a relatively simple structural device," and the result should be the same.  *Id.* at 1425.

Prior art cited in the MLV file history is critical to the DOE analysis.  "[S]ince prior art always limits what an inventor could have claimed, it limits the range of permissible equivalents of a claim."  *Wilson Sporting Goods Co. v. David Geoffrey & Assocs.*, 904 F.2d 677, 684 (Fed. Cir. 1990).  The MLV patent claims were allowed over several hundred prior art references by an examiner who considered the inventors' representations regarding the critical importance of the

claimed geometry.  The prior art discloses antenna geometries for multiband cell

phone antennas just like Samsung's, as shown in the examples below:

| Cited Prior Art | Samsung Antennas |
|---|---|
|  |  |
| Patent No.:  U.S. 6,360,105<br>Assignee:  Kyocera Corp.<br>A3959; A3961; A3965-66, 5:29-7:29 | Accused Antenna<br>SCH-R430<br>A2827 |
|  |  |
| Patent No.:  EP  892,459<br>Assignee:  Nokia Mobile Phones Ltd.<br>A9787; A9792, 9:36-53; A9803 | Accused Antenna<br>SCH-A870<br>A2813 |

The examiner easily could have ignored the holes, rounded features, bumps,

and notches of the prior art antennas and drawn four-sided polygons over these and

other prior art antennas, just as Dr. Long did to the Samsung antennas, as shown

below:

| Cited Prior Art | Samsung Antennas |
|---|---|
|  |  |
| Patent No.:  U.S. 6,360,105<br>Assignee:  Kyocera Corp.<br>*See* A3961 | Accused Antenna<br>SCH-R430<br>A2830 |
| | |
|  |  |
| Patent No.:  EP  892,459<br>Assignee:  Nokia Mobile Phones Ltd.<br>*See* A9803 | Accused Antenna<br>SCH-A870<br>A2816 |

But nothing in the specification would ever suggest to the examiner, or the public, that the multilevel structure requirement of same-sided polygons could be met by imposing four-sided, drawn objects on multi-sided, irregular structures.  To the contrary, the specification repeatedly emphasizes that the claimed multilevel structure geometry is different from that of the prior art.  *E.g.*, A276, 5:18-20, 38-40, 55-57.  These prior art antenna structures preclude Fractus' reliance on the DOE.

### 3. Fractus Presented No Substantial Evidence The Actual Antenna Portions Are Equivalent To The Drawn Four-Sided Polygons

Fractus insists a "reasonable jury could determine two elements to be equivalent." Fractus Br. 54 (quoting *Deere & Co. v. Bush Hog LLC,* 703 F.3d 1349, 1356 (Fed. Cir. 2012). As demonstrated above, given the doctrine of vitiation, the narrowness of the claims, the critical importance of the geometric limitations to claim issuance, and the limitations imposed by the prior art, no reasonable jury could determine — and indeed, the issue should not have gone to the jury to determine — that all the various multi-sided antenna parts are equivalent to drawn four-sided polygons. But even if the DOE was properly submitted to the jury, Fractus failed to meet is burden.

"Generalized testimony as to the overall similarity between the claims and the accused infringer's product or process will not suffice." *Texas Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996). But all Fractus offered was generalized testimony from Dr. Long and others that small "discontinuities" in an antenna's perimeter could be ignored if they do not materially affect overall antenna performance. *See* Fractus Br. 45-46, 52-53. None of the cited testimony was specific to any of the 51 antennas. Such sweeping statements do not meet Fractus' DOE burden.

Fractus, moreover, presented no particularized testimony or analysis directed to the alleged equivalence between the electromagnetic performance of (1) the hypothetical four-sided *polygons* drawn by Dr. Long on antenna photographs and (2) the *actual corresponding five-, six- or 12-sided shapes* alleged to be equivalent, i.e., a polygon-level analysis.   Samsung Br. 54-55; *see Texas Instruments*, 90 F.3d at 1567 ("[A] patentee must still provide particularized testimony and linking argument as to the 'insubstantiality of the differences' between the claimed invention and the accused device or process, or with respect to the function, way, result test … on a limitation-by-limitation basis.").  Fractus alleges "Long specifically discussed the small discontinuities as they relate to polygons with the same number of sides."  Fractus Br. 52.  However, the cited testimony reveals no such discussion of alleged equivalence between drawn polygons and underlying structures on a limitation-by-limitation basis.  *See, e.g.*, A1028:3-6 ("And if I look at [a bump or notch] and I don't think they're large enough to really affect the currents or the electromagnetic behavior *of the antenna*, then I just draw the polygons as if they weren't there.") (emphasis added).  Fractus' assertion that "an antenna designer would not consider the[] irregularities when examining a polygon's shape" (Fractus Br. 19) finds no support in the record.

An insignificant feature of the overall antenna is not necessarily insignificant to the electromagnetic performance of the polygon. Although capable of evaluating electromagnetic performance at the polygon level using simulation tools,[4] Fractus never attempted to demonstrate equivalence between the drawn polygons and the actual underlying antenna shapes. Even as to overall antenna performance, Fractus provided the jury with no analysis comparing Dr. Long's drawn hypothetical antennas with any actual accused antenna.

Because Fractus failed to carry its burden of providing particularized evidence on a limitation-by-limitation basis that the differences between the claimed invention and Samsung's antennas were insubstantial, the infringement verdict under the DOE must be reversed.

### D. The "Same Type" And "Same Number Of Sides" Requirements Are Distinct, And Fractus Presented No Evidence Of The Former

Under the district court's claim construction, a "multilevel structure" must be "composed of polygons … of the same type with the same number of sides." A122-23. The claim construction order makes clear the "same type" and "same number of sides" requirements are separate and distinct. Samsung Br. 50-51. The district court explained why it included each requirement. A118.

---

[4] *See, e.g.*, A3204-16 (identifying current density levels within each polygon and noting the different results at different frequencies).

Whether to include "same type" and "same number of sides" as separate and distinct requirements was a point of contention in the district court. In its claim construction brief, Samsung proposed the language adopted by the district court requiring polygons "of the same type with the same number of sides." A3871. Fractus agreed the polygons in a "multilevel structure" must all be of the same "class" (A5392), but opposed including the requirement of "same number of sides." A5396 ("A 'multilevel structure' does not require elements with the same number of sides or faces"). In its reply brief, Fractus again acknowledged the distinction by proposing a compromise construction requiring polygons "that have the same shape *or* the same number of sides." A404 (emphasis added). The district court rejected Fractus' revised construction and included both as separate requirements:

> Initially, the distinctions between "same type," "same class" and "same shape" are without difference. Thus the Court adopts Defendants' "same type" as it is used in the MLV specification. Moreover, the MLV specifications explicitly require the multilevel structures to be formed by polygons … with the same number of sides…. As such, the Court adopts Defendants' proposed construction that the multilevel structure *is composed of polygons … of the same type with the same number of sides*….

A118 (citations omitted) (emphasis added). The district court's explanation left no doubt that "same type" and "same number of sides" were to be treated separately. Fractus' suggestion that Samsung was obligated to seek further clarification or the district court left the issue to be decided by a trier of fact is wrong.

Because Fractus failed to present substantial evidence directed to the "same type" requirement of a "multilevel structure," the infringement verdict must be reversed as to the 40 accused antennas on which Dr. Long drew polygons of different types. *See* Samsung Br. 51-52; A3500-40.

Alternatively, Fractus argues the infringement determination may be affirmed based on a new claim construction wherein "same type" is equated with "same number of sides." Fractus Br. 50. Fractus, however, did not object to the claim construction order on this point. A428-36. Indeed, Fractus never presented a proposed construction to the district court wherein "same type" and "same number of sides" are synonymous. Fractus therefore waived its alternative construction. *See, e.g.*, *Sage*, 126 F.3d at 1426.

## E. Fractus Offered No Admissible Evidence Of Infringement For 50 Of The 51 Antennas

Fractus does not deny that only one phone, SCH-R430, was the subject of specific testimony for each limitation in the seven asserted claims. Evidence regarding the other 50 phones was offered, Fractus concedes, in "more summary form." A967:22-A968:10. The "summary form" is found primarily in PX-387 and PX-388 which total over 1,000 pages of graphics and technical information without a single reference to a patent number or claim. Dr. Long mentioned very little of the information found in PX-388, even with respect to SCH-R430, because that exhibit relates primarily to two patents withdrawn prior to trial, U.S. Pat. Nos.

24

7,312,762 (the "LA ANTENNA" patent) and 7,411,556 (the "MBM ANTENNA" patent).  *E.g.*, A2826-29; A2831-33.  The jury was not told what these references meant or why they received the information.

Fractus argues the exhibits were properly admitted because "[Dr.] Long testified to the same facts."  Fractus Br. 51.  But the exhibits far exceed the scope of Dr. Long's testimony, which was limited to one antenna and the MLV patents. The exhibits are tantamount to expert reports and are plainly hearsay under Fed. R. Evid. 801(c), to which Fractus does not identify any exception.  *See Weiss v. Allstate Ins. Co.*, 512 F. Supp. 2d 463, 478 (E.D. La. 2007) (parties "may not offer their own expert reports into evidence because they are inadmissible hearsay"). The additional exhibits Fractus cites do not help its cause.  Fractus Br. 51-52 (citing to PX-421 (objected to), PX-422, PX-423 and PX-424).  Taken together, Fractus' summary exhibits provide, at most, confusing snippets of relevant information (and some wholly irrelevant material) the jury was asked to piece together for 50 antennas.

Fractus argues it "took the time to 'make sure that the jury sees [Long's] analysis for every phone.'"  Fractus Br. 51.  But the district court properly characterized that exercise as "just flipp[ing] through it."  A1041:24-A1042:2. Accordingly, Fractus did not meet its burden of presenting substantial evidence of

infringement for each unique antenna.  *See Centricut, LLC v. Esab Group, Inc.*, 390 F.3d 1361, 1369-70 (Fed. Cir. 2004).

## III.    The District Court Erred In Denying JMOL Of Invalidity

Samsung's opening brief demonstrates that Cohen meets every limitation of the asserted claims.  Fractus focuses primarily on an alleged distinction between "polygons" and traces that are "wires."  Fractus Br. 58-59.  Yet "polygon" has no minimum width under the court's construction.  Thus, Cohen's traces, even if wires, necessarily constitute polygons.  Cohen also teaches the remaining limitations Fractus questions, as shown in the detailed chart submitted with Samsung's JMOL motion.  *See* A3542 (polygons); *id.* (multiple bands); A3546-47, A3549 (radiation patterns); A3548 (three bands); A3543 (matching network); A3548 (mobile phone); *id.* (mobile phone frequency).

Fractus' allegations against Samsung's expert, Dr. Best, are demonstrably false and do not go to the validity issues the jury was asked to decide.  The alleged "doctored" figure from Cohen was a demonstrative depiction emphasizing the relevant radiating portions of the antenna forming the multilevel structure.  A9747; A1564:20-A1565:9.  The "missing" non-radiating portions were irrelevant to the analysis and were shown on many other slides throughout Dr. Best's testimony. *E.g.*, A9748-49;  A9751-53; A9755-59.

Contrary to Fractus' argument (Fractus Br. 56), Dr. Best's analysis was not limited to the Cohen MI-2 antenna; he relied on several relevant Cohen embodiments.  *See, e.g.*, A2004, 7:54-55; A2007, 13:10-22; A1982, Fig. 7E; A2011, Table 5.   Dr. Best testified about both the MI-2 and MI-3 antennas, pointing out where Cohen uses the generic term "multiple iteration fractals" to highlight their common properties.   A1485:17-A1487:7; *see also* A1500:24-A1501:19.   Nothing was inaccurate or misleading in his testimony regarding simulations.

Fractus also references cross-examination of Dr. Best regarding a paper he authored nine years earlier that included a simulation of scaled-up versions of Dr. Cohen's antennas.  Dr. Best never said he analyzed those antennas for this case; he testified he analyzed the smaller ones. *See* A1602:5-22.

In his internet chat room exchange with Dr. Cohen, admitted into evidence over Samsung's objections (A1510:8-A1511:12; A1560:21-A1561:2), Dr. Best did not dispute that Cohen's antennas worked.   A1513:24-A1514:6.   Drs. Best and Cohen simply disagreed on the physics of how Cohen's antennas worked, not an issue in this case.  A1514:7-12; A1539:14-18.

## IV.   The District Court Erred In Denying JMOL For Non-Willfulness

In arguing there was clear and convincing evidence that Samsung acted in an objectively   unreasonable   manner,   Fractus   ignores   the   most   important

27

consideration:   Fractus' infringement allegations were founded on a highly subjective, convoluted "polygon decomposition" methodology developed entirely for this case.  No reasonable person, reviewing the specification and prosecution history, could have possibly expected that such a methodology would be applied to Samsung's antennas.

For example, it was not objectively unreasonable for Samsung to believe Fractus would have to meet its burden of proving the existence of each aspect of a "multilevel structure" in the accused antennas.  Samsung could reasonably believe its antennas did not contain a majority of "clearly visible" polygons, as that term would be understood by one skilled in the art.  Indeed, Dr. Long characterized "clearly visible" as polygons that "jump out at you."  A1157:8-12.  Moreover, as Fractus acknowledges, the jury's infringement finding depended on collapsing the "clearly visible" requirement into the "50% free perimeter" requirement, and equating "same type" and "same number of sides."

Samsung was also objectively reasonable in concluding that 49 of the 51 antennas incorporated curved features and thus did not contain "polygons" within the term's ordinary meaning.  *See* A3448-98.  The district court also erred when it failed to define the "second level of detail" in a "multilevel structure" despite the specification's teachings.  Even if this Court ultimately rules in Fractus' favor,

Fractus did not demonstrate clearly and convincingly that these claim construction questions are not, at a minimum, close.

Samsung's invalidity defense was also objectively reasonable because Cohen provides a technical disclosure of every element of the asserted claims. The Central Reexaminations Unit's conclusions, now on appeal to the PTAB, support Samsung's good faith belief in those claims' invalidity during the allegedly willful activity. "It is proper [for the Federal Circuit] to take judicial notice of a decision from another court or agency at any stage of the proceeding, even if it was not available to the lower court." *Function Media, L.L.C. v. Google Inc.*, 708 F.3d 1310, 1316 n.4 (Fed. Cir. 2013).

## V.     The Damages Award Should Be Vacated

### A.     Fractus Violated The Entire Market Value Rule, And Its Expert's Apportionment Analysis Was Unreliable And Should Have Been Excluded

Fractus does not deny it based its damages calculation on the average selling price ("ASP") of Samsung phones, rather than the price of the antennas, which are the smallest salable patent-practicing unit. *See* Fractus Br. 70-72. The phones' ASP was the very foundation of Fractus' damages calculation, as illustrated in this slide presented to the jury, which Fractus ignores in its brief:



A3568.  Fractus' counsel introduced the slide as "how you got to your 40-to-60-cent range" and "describing your royalty rate calculation."  A1279:7-13.  As the district court found, "Fractus plainly made reference to, and began its damages calculation with, the average price of infringing Samsung phones."  A50.

Fractus' arguments regarding Mr. Nawrocki's adjustments to the phones' ASP (Fractus Br. 69) are flatly inconsistent with *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2011).  In *Uniloc* — which Fractus does not mention — this Court rejected use of entire market value even as a "check" in the damages analysis, because "[b]eginning from a fundamentally flawed premise and adjusting it based on legitimate considerations specific to the facts of the case nevertheless results in a fundamentally flawed conclusion."  *Id.* at 1317.  The Court concluded, "[e]ven if the jury's damages calculation was not based wholly on the entire market value check, the award was supported in part by the faulty foundation of the [accused product's] entire market value."  *Id.* at 1321.  Fractus

cannot escape from its improper reliance on the phones' ASP as the foundation for its analysis.

Fractus' attempt to distinguish *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51 (Fed. Cir. 2012), is similarly unavailing. *LaserDynamics* aptly acknowledged that "one way in which the error of an improperly admitted entire market value rule theory manifests itself is in the disclosure of the revenues earned by the accused infringer associated with a complete product rather than the patented component only." *Id*. at 68. That is exactly what happened here.

Fractus argues that because it did not explicitly refer to Samsung's overall revenues for sales of all accused phones, the jury's verdict was not compromised. Fractus Br. 71. But Fractus told the jury both the phones' ASP and the number of phones sold, thereby allowing, if not inviting, the jury to easily calculate that Samsung's revenues for the phones exceeds $9 billion. A1237:25-A1238:8. The loophole in the EMVR sought by Fractus would encourage the very sort of mischief the rule was intended to prevent.

Contrary to Fractus' argument, Samsung's complaint regarding the apportionment analysis by Fractus' damages expert goes to admissibility, not the evidence's weight. A lack of "credible economic analysis," in connection with an apportionment that "appears to have been plucked out of thin air based on vague qualitative notions," justifies exclusion of the expert's testimony. *LaserDynamics*,

694 F.3d at 69.  Among the evidence identified by Fractus, there is no quantitative economic analysis supporting its valuation of the antenna as 10% of the phones' ASP.  This is precisely the defect *LaserDynamics* held required exclusion of the opinion.  *Id.*

### B.    Samsung's Appeal Focuses On Fractus' Improper Use Of The Phones' Entire Market Value, Not The Quantum Of Evidence Presented To The Jury

The other evidence Fractus cites seeking affirmance (Fractus Br. 65-68) is irrelevant to the issues presented by Samsung on appeal because Samsung challenges two particular aspects of Fractus' damages calculation:  (1) Fractus' reliance on the phones' entire market value; and (2) its expert's allocation of 10% of the phones' ASP.  *See* Samsung Br. 66-73.  Fractus cites no case in which this Court determined a patentee's improper reliance on the EMVR was harmless because of other evidence in the record (*see* Fractus Br. 73), and none has been located by Samsung's counsel.  Applicable precedent, including *Uniloc*, 632 F.3d at 1311-21, and *LaserDynamics*, 694 F.3d at 66-69, points to the opposite conclusion.

Nevertheless, Samsung briefly addresses Fractus' scattershot arguments regarding other evidence.  Because none of it has a meaningful nexus to the claimed invention, it could not support the award in any event.  *See ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010).

*First*, Samsung agreed with Fractus that a per-unit running royalty was proper only in the context of the hypothetical negotiation, as a vehicle to reach a reasonable royalty for past damages should infringement be found. There is no evidence Samsung would have actually agreed to pay a running royalty outside the hypothetical construct.

*Second*, Fractus' profit on mobile antennas during its final period of sales to Samsung was artificially inflated. Because the relationship was ending and the phones at issue were already designed and in production, Samsung agreed to pay the inflated price, allowing Fractus to recoup some of its fixed costs. A699:2-A700:8. Fractus' cell phone antenna business lost money two out of three years it was a viable business; in 2004, the only profitable year, the profit was only 1.8 cents per unit. A1689:3-A1691:2.

*Third*, on the importance of internal antennas to mobile phones, the MLV patents say nothing about internal mobile phone antennas, and Fractus concedes it did not invent internal antennas. *See, e.g.*, A539:15-18; A686:10-15.

*Fourth*, as to the alleged importance of the patented technology, Fractus exaggerates what the claims of the MLV patents actually cover and misleadingly cites a Samsung employee's email that did not address the patented technology.

*Fifth*, Fractus' mobile phone licenses are not relevant to the damages calculation for many reasons, including that they covered all of Fractus' worldwide

intellectual property, including 179 patents and applications, not just the patents-in-suit.  A proper calculation would include worldwide product sales, which results in a much lower per-unit royalty.  *See* A1680:5-20; A1711:2-13.

*Sixth*, the Siemens, Telnet, and Ficosa licenses are far removed from the issues in this case because they were not shown to be for internal cell phone antennas.  *See* A1299:22-A1301:8; A1302:17-A1307:23; *see also ResQNet*, 594 F.3d at 871-72.

*Seventh*, Apple's "antenna-gate" has no relevance to the value of antennas to customers, and certainly not the value of Fractus' alleged contribution to antenna design.

## C.    Reversal On Claim Construction Of "Polygon" Or On Infringement Of Certain Phones Is Another Independent Basis To Vacate The Damages Award

The damages award must be vacated if this Court changes the construction of "polygon" or holds that certain phones do not infringe.  A change in the construction of polygon, e.g., excluding hybrid shapes, would require the infringement finding to be reversed as to a vast majority of the accused phones (*see supra* § I.A.), and would therefore require this Court to vacate the jury's entire damages award.  *See Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1310 (Fed. Cir. 2007); *see also Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1555 (Fed. Cir. 1995) (en banc).

At a minimum, a change in the construction of polygon would affect the availability of non-infringing alternatives due to the resultant ease of designing around, which should result in a lower damages award.  *See, e.g.*, *Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563, 1571-72 (Fed. Cir. 1996) (existence of non-infringing alternatives can show that the alleged infringer "would have been in a stronger position to negotiate for a lower royalty rate").

The single case cited by Fractus, *Energy Transp. Group, Inc. v. Demant Holding A/S*, 697 F.3d 1342 (Fed. Cir. 2013), is distinguishable.  There, the defendant had waived the argument relating to the damages issue, and the Court concluded that it could not "'correct' a damages figure by extrapolating a royalty rate…" as proposed by defendants in any event.  *Id.* at 1357-58.  No such circumstances exist here.

## CONCLUSION

Samsung respectfully requests that this Court reverse the judgment and vacate the damages award, or remand for remittitur or a new trial on damages.

Dated: September 23, 2013          Respectfully submitted,


                                   */s/ George A. Riley*        
                                   George A. Riley
                                   Susan Roeder
                                   O'MELVENY & MYERS LLP
                                   Two Embarcadero Center
                                   San Francisco, CA 94111
                                   (415) 984-8700

                                   Michael J. Barta
                                   BAKER BOTTS L.L.P.
                                   1299 Pennsylvania Avenue N.W.
                                   Washington, D.C. 20004
                                   (202) 639-7700

                                   Neil P. Sirota
                                   Eric J. Faragi
                                   Jennifer C. Tempesta
                                   BAKER BOTTS L.L.P.
                                   30 Rockefeller Plaza
                                   New York, NY 10112
                                   (212) 408-2500

                                   **ATTORNEYS FOR DEFENDANTS-
                                   APPELLANTS**

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

**Fractus S.A. v. Samsung Electronics Co., 2012-1633**

### <u>PROOF OF SERVICE</u>

The undersigned hereby certifies that on September 23, 2013, I electronically filed the foregoing REPLY BRIEF OF DEFENDANTS-APPELLANTS with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the appellate CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/  George A. Riley*
George A. Riley

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

**Fractus S.A. v. Samsung Electronics Co., 2012-1633**

## <u>CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(A)(7)</u>

I hereby certify under Fed. R. App. P. 32(a)(7) that this brief has a proportionately spaced typeface of 14 points, and contains 6,990 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Fed. Cir. R. 32(b), according to the word count of Microsoft Word 2003, which was used to prepare this brief.

*/s/ George A. Riley*
George A. Riley